# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER M. PETROS,<br><br>    Plaintiff,<br><br>v.<br><br>OFFICER HIRAM DUNCAN, et al.,<br><br>    Defendants. | Case No. 1:19-cv-00277-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING CERTAIN CLAIMS AND DEFENDANTS<br><br>ORDER DIRECTING CLERK OF THE COURT TO REDESIGNATE THIS AS A REGULAR CIVIL RIGHTS ACTION AND RANDOMLY ASSIGN A DISTRICT JUDGE<br><br>(ECF No. 21)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

Christopher M. Petros ("Plaintiff"), a state prisoner proceeding *pro se* and *in forma paupers*, filed this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint in this action on August 10, 2018, in the Central District of California. (ECF No. 1.) On February 26, 2019, the matter was transferred to the Eastern District of California. (ECF No. 8.) On May 28, 2019, Plaintiff's complaint was screened and he was granted an opportunity to file an amended complaint. (ECF No. 20.) Currently before the Court is Plaintiff's first amended complaint, filed on June 26, 2019. (ECF No. 21.)

## I.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## FIRST AMENDED COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint as true only for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation and is currently housed at Kern Valley State Prison. The incidents alleged in the complaint occurred prior to his incarceration.

On July 4, 2016, Plaintiff was contacted by the Turlock Police Department regarding the

possible burglary of his girlfriend's car. (Compl. 5, 6,[1] ECF No. 21.) Plaintiff drove over seventy-five miles to meet the police and was very cooperative. (Id.) Defendant Duncan was very hostile as he questioned Plaintiff for over an hour. (Id. at 6.) Plaintiff was placed under arrest and Defendant Duncan took him to Doctor's Hospital. (Id. at 5.) Plaintiff was having an anxiety attack and breathing problems and Defendant Duncan was belittling him to the doctor stating that Plaintiff was faking a heart attack. (Id.) Plaintiff responded that Defendant Duncan was stupid and had no clue what it felt like. (Id.) Defendant Duncan told Plaintiff to "shut [his] white fat mouth." (Id.) After Plaintiff was released from the hospital, Defendant Duncan put handcuffs on Plaintiff and Plaintiff told Defendant Duncan that they were too tight. (Id.) Defendant Duncan responded that it was too bad and told Plaintiff to shut up. (Id.)

As Defendant Duncan was walking Plaintiff to the police car, he was holding Plaintiff's arm very tight and it hurt. (Id.) Plaintiff shook his upper arm to loosen Defendant Duncan's grip. (Id.) Defendant Duncan slammed Plaintiff to the ground by sweeping his legs and pulling on Plaintiff's arm. (Id.) Plaintiff's arms were handcuffed behind his back and he was unable to break his fall. (Id.) Plaintiff was knocked unconscious and when he woke up there was a puddle of blood about four inches in diameter on the ground. (Id.) Four individuals carried him back into the hospital. (Id.) Plaintiff's nose was bleeding, his eyes were watering, there was ringing in his ears, and he was dizzy. (Id.) The doctor put a band-aid on Plaintiff's nose. (Id.)

After Plaintiff was booked into the jail, the nurses checked on him three times a day and told him not to blow his nose. (Id.) The bleeding would not stop and his nose was packed with gauze. (Id.) His nose became infected and he was placed on antibiotics. (Id. at 6.) Plaintiff was taken to Doctor's Hospital on July 22, 2016 and a CT scan showed that his nose was broken. (Id.)

In his police report, Defendant Duncan states that he contacted Defendant Cervenka, his supervisor, and advised him that he had to take Plaintiff to the ground. (Id. at 7.) The report states that Defendant Cervenka met Plaintiff at the jail and conducted a follow-up investigation,

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1 but that did not happen. (Id.) Defendant Cervenka came to the jail and walked up to the police car. (Id.) Plaintiff was sitting in the car. (Id.) Defendants Cervenka and Duncan both laughed and walked away. (Id.) Defendant Cervenka never asked Plaintiff any questions nor gave him an opportunity to file complaint regarding the tight handcuffs or the excessive force. (Id.) Plaintiff also alleges that Defendant Duncan stated that there were witnesses to the incident but he did not put their names in the report.[2] (Id.)

Plaintiff brings this action against Defendants Duncan, Cervenka, and the City of Turlock alleging excessive force in violation of the Fourth Amendment and state law claims of negligence and failure to investigate. The claims against the officers are brought in their official and individual capacities. Plaintiff is seeking monetary damages.

## III.

## DISCUSSION

### A. Excessive Force in Violation of the Fourth Amendment

Excessive force claims which arise in the context of an arrest or investigatory stop of a free citizen invoke the protections of the Fourth Amendment and are governed by its "reasonableness" standard. Graham v. Connor, 490 U.S. at 394; see Pierce v. Multnomah Cnty., 76 F.3d 1032, 1042 (stating that "the seizure that constitutes arrest continues throughout the time the arrestee is in the custody of the arresting officers and thus any use of excessive force during this extended arrest period is subject to the Fourth Amendment's constraints[]" (internal quotation marks omitted)). In making an arrest, "[t]he Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them." Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir.

---

[2] Although unclear if Plaintiff is attempting to state a claim based upon his allegations that Defendant Duncan completed an incomplete or false police report, such an allegation would not state a cognizable claim. The Due Process Clause itself does not contain any language that grants a broad right to be free from false accusations, but guarantees certain procedural protections to defend against false accusations. Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986). Here, Plaintiff's complaint is that, although Defendant Duncan stated that Defendant Cervenka conducted an investigation, he does not believe that such an investigation occurred because Defendant Cervenka did not speak with Plaintiff. However, Plaintiff does allege that Defendant Cervenka responded to the incident and spoke with Defendant Duncan. Further, Plaintiff alleges that Defendant Duncan did not include the names of witness in the report although he stated that witness were present. These allegations are insufficient to rise to the level of a constitutional violation.

4

1  2007). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's
2  chambers[] … violates the Fourth Amendment." Graham, 490 U.S. at 396 (internal citation and
3  quotation marks omitted). The reasonableness inquiry in excessive force cases is whether the
4  officer's actions were " 'objectively reasonable' in light of the facts and circumstances
5  confronting" him." Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005).

Determining whether the force used to affect a particular seizure is reasonable, "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Ames v. King Cty., Washington, 846 F.3d 340, 348 (9th Cir. 2017) (quoting Graham, 490 U.S. at 396). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Wilkinson v. Torres, 610 F.3d 546, 550 (9th Cir. 2010) (quoting Graham, 490 U.S. at 396). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 397.

1. Tight Handcuffs

Here, Plaintiff alleges that he told Defendant Duncan that the handcuffs were too tight and Defendant Duncan just responded, "too bad" and "shut up". (Compl. 5.) A claim regarding overly tight handcuffing can constitute excessive force. Wall v. Cty. of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004); see Meredith v. Erath, 342 F.3d 1057, 1063 (9th Cir. 2003) (keeping plaintiff in handcuffs for thirty minutes that were so tight they caused unnecessary pain); Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir. 1993) (handcuffs so tight that they caused pain and bruises that lasted for several weeks); Hansen v. Black, 885 F.2d 642, 645 (9th Cir. 1989) (unreasonably injuring hand and wrist while handcuffing). In the May 28, 2019 screening order Plaintiff was advised, "Plaintiff has failed to allege any facts describing the way Defendant Duncan handcuffed him or any facts establishing that the handcuffs caused Plaintiff to suffer any

pain, bruises, or any other injury to his wrists. Therefore, Plaintiff has failed to allege a cognizable claim for excessive force under the Fourth Amendment against Defendant Duncan." (ECF No. 20 at 7.)

In his amended complaint, Plaintiff has again merely alleged that he told Defendant Duncan that the handcuffs were too tight. This standing alone is insufficient to state a claim for excessive force in violation of the Eighth Amendment. Iqbal, 556 U.S. at 678-79 (plaintiff must allege sufficient facts for the court to infer that the defendant is liable for the conduct alleged). Plaintiff has previously been advised that the allegation that his handcuffs were too tight is insufficient to state a cognizable claim and has failed to allege any additional facts to cure the deficiency in the claim. The Court finds that granting further leave to amend this claim would be futile and recommends that it be dismissed without leave to amend. Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013).

### 2. Taking Plaintiff to the Ground

Plaintiff alleges Defendant Duncan used excessive force when he took him to the ground. In determining if the force used was reasonable, the court considers, in light of the particular facts and circumstances that Defendant Duncan faced while attempting to escort Plaintiff to the police car, whether the actions he took in subduing Plaintiff were objectively reasonable. Ames, 846 F.3d at 348. In determining the reasonableness of the officer's conduct, the court must "balance the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Shafer v. Cty. of Santa Barbara, 868 F.3d 1110, 1116 (9th Cir. 2017), cert. denied sub nom. Shafer v. Padilla, 138 S. Ct. 2582 (2018) (quoting Graham, 490 U.S. at 396). In doing so the Court weighs "three non-exclusive factors: (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.' " Shafer, 868 F.3d at 1116. We judge the reasonableness of the force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," because "officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is

necessary in a particular situation[.]" Id. (citations omitted). This determination is made from "from the perspective of a reasonable officer on the scene" and not "with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.

First, the Court considers the type and amount of the force used. Here, Defendant Duncan was escorting Plaintiff back to the police car after Plaintiff had been seen at the hospital for an anxiety attack. Plaintiff admits that he shook his upper arm in an attempt to loosen Defendant Duncan's grip. After he shook his arm to loosen Defendant Duncan's grip, Defendant Duncan swept his legs and "slammed" him to the ground. Plaintiff alleges that his hands were cuffed behind his back, Defendant Duncan had taken his shoes from him, and Defendant Duncan had full control of him at the time. At the time that Plaintiff was taken down, they were walking in the parking lot and given the risk of injury in the circumstances, the Court finds that Defendant Duncan used at least moderate force.

Here, it would appear that Plaintiff had been arrested for the burglary of his girlfriend's vehicle and he did not present an immediate threat to the officer or others, so these factors weigh against the use of force. While Plaintiff alleges that he shook his upper arm in an attempt to loosen the officer's grip, it is not clear that no other options were available as Plaintiff alleges that he was compliant with the officer and merely shook his arm to loosen the officer's painful grip. This factor weighs in favor of finding that the use of force was excessive at the pleading stage. Liberally construing Plaintiff's complaint, the Court finds that Plaintiff has stated an excessive force claim against Defendant Duncan.

3. Defendant Cervenka

Plaintiff also alleges an excessive force claim against Defendant Cervenka who was Defendant Duncan's supervisor. "Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of *vicarious liability*." Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (citation and internal quotation marks omitted); Iqbal, 556 U.S. at 676. "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Crowley, 734 F.3d at 977 (citation and internal

quotation marks omitted). "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Id.

There are no allegations in the complaint that Defendant Cervenka used any force on Plaintiff or that he was present when the force was used. Plaintiff contends that Defendant Cervenka was called to investigate after the use of force. Plaintiff has failed to allege that Defendant Cervenka was personally involved in the incident.

Plaintiff alleges that Defendant Cervenka was called to the scene to investigate the use of force and did not talk to Plaintiff. However, Plaintiff has failed to allege a causal connection between any conduct of Defendant Cervenka and a constitutional injury. Defendant Cervenka was not present until after the use of force occurred and his investigation of the incident or lack of such did not cause a constitutional injury. Further, the first amended complaint does not allege any policy that was the moving force behind the use of force. Plaintiff has failed to state a claim against Defendant Cervenka.

4. City of Tulare

Plaintiff also names the City of Tulare stating they are responsible for the actions of their police officers. As Plaintiff was previously advised, a local government unit may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability. Monell v. Department of Social Services, 436 U.S. 658, 691 (1978). Rather, a local government unit may only be held liable if it inflicts the injury complained of through a policy or custom. Waggy v. Spokane County Washington, 594 F.3d 707, 713 (9th Cir. 2010).

Despite being informed that to state a claim against the City of Turlock Plaintiff must allege a specific policy that was the moving force behind a constitutional violation, (ECF No. 15 8-9), Plaintiff has failed to identify any policy of the City of Turlock that inflicted his injury. Plaintiff is seeking to impose liability against the City of Turlock solely on the basis that it employed Defendant Duncan. The allegation that the City of Turlock is responsible for the acts of its police officers fails to state a claim.

### B. Official Capacity Claims

Plaintiff brings his claims against the defendants in their official capacities. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). A suit brought against government officials in their official capacity is generally equivalent to a suit against the government itself. McRorie v. Shimoda, 795 F.2d 780, 783 (9th Cir. 1986). Therefore, officials may be held liable if "'policy or custom' . . . played a part in the violation of federal law." McRorie, 795 F.2d at 783 (quoting Kentucky v. Graham, 473 U.S. 159, 166 (1985). The official may be liable where the act or failure to respond reflects a conscious or deliberate choice to follow a course of action when various alternatives were available. Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (quoting City of Canton v. Harris, 489 U.S. 378, 389 (1989); see Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Waggy, 594 F.3d at 713.

Plaintiff cannot seek monetary damages against any named defendant for actions taken in their official capacity. Aholelei, 488 F.3d at 1147. Further, Plaintiff has failed to allege that there was a policy or custom that played a part in Defendant Duncan's use of force. McRorie, 795 F.2d at 783. Plaintiff has failed to state an official capacity claim in this action. For these reasons, the Court recommends that the official capacity claims be dismissed.

### C. State Law Claims

Plaintiff alleges state law claims including negligence and a failure to investigate. As Plaintiff was previously advised, the California Government Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1239 (Cal. 2004); Shirk v. Vista Unified School District, 42 Cal.4th 201, 209 (2007). To state a tort claim against a public employee, a plaintiff must allege compliance with the California Tort Claims Act. Cal. Gov't Code § 950.6; Bodde, 32 Cal.4th at

1244. "[F]ailure to allege facts demonstrating or excusing compliance with the requirement subjects a compliant to general demurrer for failure to state a cause of action." Bodde, 32 Cal.4th at 1239.

Despite the previous advisement that he is required to plead that he has complied with the California Government Claims Act to state a tort claim, Plaintiff's first amended complaint is devoid of any such allegations. Accordingly, Plaintiff has failed to state a cognizable claim under California law.

## IV.

## CONCLUSION AND RECOMMENDATION

For the reasons discussed above, the first amended complaint states a claim against Defendant Duncan for excessive force in violation of the Fourth Amendment, but fails to state any other claims for violations of Plaintiff's federal rights. Plaintiff was previously notified of the applicable legal standards and the deficiencies in his pleading, and despite guidance from the Court, Plaintiff's first amended complaint is largely identical to the original complaint. Based upon the allegations in Plaintiff's original and first amended complaint, the Court is persuaded that Plaintiff is unable to allege any additional facts that would state any other cognizable claims, and further amendment would be futile. See Hartmann, 707 F.3d at 1130 ("A district court may deny leave to amend when amendment would be futile.") Based on the nature of the deficiencies at issue, the Court finds that further leave to amend is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th. Cir. 2000); Noll v. Carlson, 809 F.2d 1446-1449 (9th Cir. 1987).

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's excessive force claim against Defendant Duncan based on tight handcuffs be DISMISSED for failure to state a claim;
2. Defendants Cervenka and the City of Turlock be DISMISSED from this action for Plaintiff's failure to state a claim against them;
3. Plaintiff's state law claims and official capacity claims be DISMISSED for failure to state a claim; and
4. This action proceed against Defendant Duncan, in his individual capacity, on

Plaintiff's excessive force claim based on taking Plaintiff to the ground.

IT IS HEREBY ORDERED that the Clerk of the Court shall reassign this matter as a regular civil action and randomly assign this matter to a District Judge.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. **Within thirty (30) days of service** of this recommendation, Plaintiff may file written objections to this findings and recommendations with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 31, 2019**

UNITED STATES MAGISTRATE JUDGE